278 F.2d 577
 NEW YORK STATE NATURAL GAS CORPORATION,
v.
SWAN-FINCH GAS DEVELOPMENT CORPORATION and Rockton Drilling
Corporation, A. H. Reitz and Keta Gas & Oil Company.
Keta Gas & Oil Company, by Its Receiver, Barton Grubbs, 2d,
and A. H. Reitz, Appellants.
 No. 12939.
 United States Court of Appeals Third Circuit.
 Argued Nov. 6, 1960.
Decided April 28, 1960.
 
 Robert V. Maine, DuBois, Pa. (Leonard M. S. Morris, Pittsburgh, Pa., David E. Blakley, DuBois, Pa., on the brief), for appellants.
 William H. Eckert, Pittsburgh, Pa. (G. Kirby Herrington, Cloyd R. Mellott, Eckert, Seamans & Cherin, Pittsburgh, Pa., on the brief), for appellee.
 Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 This dispute presents opposing claims to the ownership of the natural gas underlying a tract of land of about 1000 acres, being Warrant 2001, Houston Township, Clearfield County, Pennsylvania. The case is in federal court solely because of diversity of citizenship of the parties. Accordingly, the real property law of Pennsylvania is applicable and controlling.
 
 
 2
 The common source of title relied upon by all of the parties is the ownership of this property in fee simple by Benjamin Bowman and James Rowland in the 1880's. The surface rights and principal title have passed by mesne conveyance from Bowman and Rowland to appellees. However, Bowman and Rowland made a separate grant of mineral rights in the tract. Through this transfer and certain tax sales based on delinquent mineral assessments, appellants trace and claim title in minerals underlying Warrant 2001. The dispute is whether rights in natural gas are included in the general title to the land or go with the mineral title. The District Court sustained the claim of the owner of the general land title. New York State Natural gas Corp. v. Swan-Finch Gas Development Corp., D.C.W.D.Pa.1959, 173 F.Supp. 184. The holders of the mineral title have appealed.
 
 
 3
 In 1887 Bowman and Rowland conveyed mineral rights in Warrant 2001 to appellants' predecessor by means of a deed which contained this granting clause:
 
 
 4
 '* * * do grant, bargain, sell, alien, enfeoff, release and convey unto the same Caledonia Coal Company its successors and assigns, All the coal, coal oil, fire clay and other minerals of every kind and character, in upon and under the following described tracts of land. * * *'
 
 
 5
 In interpreting this language we are urged to consider that from time to time for many purposes and in various situations courts in Pennsylvania and elsewhere have classified natural gas as a mineral. But our problem is narrow and technical. We must discover the Pennsylvania rule of property law as to the interpretation of such a granting clause as we have here. The Pennsylvania cases apply a consistent and unequivocal rule of construction to deeds in which an owner of land has granted the fee to another and has reserved to himself title to all minerals in the tract, using essentially the language which appears in the present deed. The rule is that such a general reservation of minerals without specific mention of natural gas does not suffice to reserve natural gas, at least unless such intention is affirmatively and convincingly proved in the particular case. Bundy v. Myers, 1953, 372 Pa. 583, 94 A.2d 724; Silver v. Bush, 1906, 213 Pa. 195, 62 A. 832; Dunham & Shortt v. Kirkpatrick, 1882, 101 Pa. 36. No such affirmative showing appears here.
 
 
 6
 Appellants, recognizing this case law, seek to avoid it by arguing that it applies to language used by way of reservation but not to the same language used in a granting clause. However, that distinction has now been rejected by the Supreme Court of Pennsylvania and the rule of reservation cases has been authoritatively applies to language in a grant. Highland v. Commonwealth of Pennsylvania, Pa., 161 A.2d 390. That case contains an explicit ruling that the fact 'that the word 'minerals' appears in a grant, rather than an exception or a reservation, in nowise alters the rule.' It follows that the District Court was correct in holding that the grant of mineral rights to appellants' predecessors in title did not include the natural gas.
 
 
 7
 As a separate point, appellants urge that certain of their predecessors in title acquired gas rights in the tract by purchasing the mineral rights at certain tax sales which occurred about the beginning of this century. The argument runs that after severance of the ownership of minerals from ownership of the surface, the surface owner failed to procure any tax assessment of whatever interest he retained in gas. In these circumstances it is contended that the assessor, perhaps by mistake, actually assessed the value of the interest in natural gas to the holder of the mineral title. When this mineral assessment was not paid and a tax sale followed, the purchaser is said to have acquired natural gas rights.
 
 
 8
 This contention is said to be supported by Hutchinson v. Kline, 1901, 199 Pa. 564, 49 A. 312. But the Hutchinson case recognizes and is predicated upon the well established rule that a tax deed conveys only such interest as was actually assessed to the defaulting taxpayer. Boulton v. Starck, 1951, 369 Pa. 45, 85 A.2d 17; Brundred v. Egbert, 1894, 164 Pa. 615, 30 A. 503. Thus, it is an essential presupposition of appellants' argument that the assessment in question did in fact include an evaluation of natural gas rights and a taxing of this interest. However, the court below specifically found that the mineral assessments which led to tax sales in this case did not in fact included gas. This finding is based upon evidence in the present case and upon still another rule of Pennsylvania law. The rule has been authoritatively stated as follows:
 
 
 9
 'Because there may be a reservation of oil and gas by the grantor of the surface, or there may be an express grant of all the oil and gas underlying one or serveral tracts of land, it does not follow that in point of fact there is any such estate in existence. When the assessor goes upon the land, it is his duty to make a valuation upon information or knowledge which will furnish some definite fixed basis of valuation. A mere naked reservation of oil and gas in a deed without any other facts to base a valuation upon is not sufficient to warrant the assessment of taxes. Development in the neighborhood, sales of oil or gas lands in close enough proximity to add value, or any other element of value which may form a basis of valuation may be taken into consideration by the assessor or other taxing authorities, but it should always be borne in mind that real estate is the thing being dealt with, and that oil and gas are considered real estate, and, if there be no oil and gas, then there is no real estate to be taxes.' F. H. Rockwell & Co. v. Warren County, 1910, 228 Pa. 430, 433-434, 77 A. 665, 666.
 
 
 10
 Thus, to justify a finding that the general mineral assessments in question were in fact assessments of natural gas it would have had to appear that there was some reason to believe at the time of the assessments in question that gas of commercial pontential was present under Warrant 2001 and that it had value which could be estimated. However, the present record shows that until very recently it was the consensus of geological experts that the only bas bearing sand in the general area did not extend under Warrant 2001. Indeed, it was not until after the process of hydraulic facturing was invented in 1949 that it became possible to ascertain the presence of natural gas in commercially significant questities in this immediate area. On this basis, the properly, the court below ruled that the mineral assessments in question 'were not intended to and did not include the natural gas'. In these circumstances the purchasers of mineral rights at tax sales cannot have acquired natural gas rights.
 
 
 11
 These and all other points made on this appeal are ably analyzed in the elaborate opinion of the District Court. No useful purpose would be served by repetitive statement here.
 
 
 12
 The judgment will be affirmed.