Nypen Corporation *v.* Sechrist et al., Appellants.

Argued November 13, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John C. Youngman,* for appellants.

*Harry A. Baird,* of *Humes & Baird* and *Gilson & Haag,* for appellee.

OPINION BY BALDRIGE, J., January 30, 1940:

This action in trespass was brought by the plaintiff under section 4 of the Act of June 9, 1911, P. L. 861 (32 PS sec. 581) to recover treble damages from the defendants, appellants herein, for the cutting and removal of timber from a 50-acre tract of land to which plaintiff claims title. The defendants based their defense on a tax title. The trial resulted in the court's directing a verdict of $300 for the plaintiff after it had waived its claim for treble damages.

On or about December 5, 1895, C. S. Green owned a tract of unseated land in Jackson Township, Lycoming County, warranted in the name of Miller and Murray, bearing the number 4786, containing 627 acres. On that date Green entered into a written article of agreement, which was never recorded, with Orval L. Landon, whereby he agreed to sell 60 acres, described by metes and bounds, of the larger tract, for a consideration which included the payment of all taxes by Landon. Landon

entered into possession of the land, erected certain improvements thereon and the assessment thereof was changed from unseated to seated land.

In the spring of 1896, Bastian, the assessor, went on the property for the purpose of assessing it and found that a house was being erected by Landon. He did not have any conversation with Landon relative to the assessment he was making that year, but Landon told him of his purchasing the land. Bastian, for the year 1896, assessed the property separately from the larger tract as 60 acres, in the name of Orval Landon as owner, and reduced, correspondingly, the Green tract. The smaller tract continued to be assessed to Landon until 1906. By 1900, however, Landon had abandoned the land in question, having surrendered his rights under the article of agreement. The legal title thereto during all this period continued to be in Green.

In 1907, Bastian, who had been out of office, again became the assessor for Jackson Township. In fixing the assessment of the Landon lot, Bastian, knowing that Landon had forfeited all claim thereto, assessed it in the name of C. S. Green, giving the acreage as 50 instead of 60, designating it "unseated" land, without Green's knowledge or consent. Green's larger tract was assessed in 1906 as containing but 587 acres. In 1907, when there was a triennial assessment, Green was assessed as the owner of 637 acres, an increase of just 50 acres over the previous year, and paid the taxes. Thus, it appears the smaller tract was added to the larger one, notwithstanding, as noted above, it was also assessed separately to Green.

The 1907 taxes on the smaller tract were not paid and a treasurer's sale followed on June 8, 1908, when the 50-acre tract was bid in by John Sechrist, one of the defendants, without the knowledge of Green. In 1910 Green sold his land in Jackson Township, including the Landon tract to Mylert Armstrong, from whom the

plaintiff, through mesne conveyances, derived its title. In 1937 Sechrist sold the timber on the land alleged to have been acquired at treasurer's sale to William Yeagle, the other defendant herein. Yeagle entered upon the land, cut and removed the timber, for which this suit was brought.

A number of propositions regarding the regularity of the proceedings that followed the treasurer's sale were argued before us. It is unnecessary to consider whether the formalities required by law after the sale were followed, as we are of the opinion that the separate assessment in 1907 to Green is invalid. Certainly, the assessor could not, in any event, include the acreage of the smaller tract in the assessment of the larger tract and also assess the smaller one separately.

In *McCormick et al., Trustees v. Berkey et al.,* 238 Pa. 264, 280, 86 A. 97, the court said: "It is the duty of taxing officers to assess the entire adjacent real estate holdings of the owner, not severed or detached by his own act, as a single body, and they have no authority to divide them and assess them severally for the purposes of taxation." In *Brown v. Hays,* 66 Pa. 229, 235 the Supreme Court said: "The acts relating to the assessment of unseated lands are plain, and require the assessor to assess and return the lands in his township in single tracts according to their ownership. He may follow the sale or division of the tract by the owner, but he has no power himself to cut up the property of a single owner and return it in parcels." As pointed out in *Reading et al., v. Finney et al.,* 73 Pa. 467, 472, where a severance occurs, as here, and both parcels of land are charged with taxes, it is a case of double assessment. The payment by Green, the legal owner, of the taxes on the larger tract, embracing the 50 acres in dispute, discharged all of that body of land from further taxes for the year 1907. He was required to do nothing further to retain his title.

The law authorizes the sale of land by the county

treasurer for the purpose of the collection of taxes, but it does not sanction the sacrifice of the title of an individual owner through an assessor's error: *Jenks et al., v. Wright,* 61 Pa. 410. The courts have uniformly held under the provisions of the Act of March 13, 1815, P. L. 177 (72 PS sec. 5981) which was in force in 1907, that mere irregularities in the manner of exercising the power conferred by the statutes dealing with tax sales are not fatal to a sale. A valid assessment, however, is a necessary prerequisite which must be complied with, otherwise the sale is void: *Simpson v. Meyers,* 197 Pa. 522, 527, 47 A. 868.

The treasurer's sale of the 50-acre tract being void for want of authority to make it, Green was not required to redeem the land and the purchaser did not acquire a good title thereto.

The appellants cite *Bechdle v. Lingle et al.,* 66 Pa. 38, and *Weaver v. Meadville Lumber Mfg. Co.,* 61 Pa. Superior Ct. 167, which, in our judgment, are not in conflict with the cases to which we have referred. In the Bechdle case, the land had not been on either the seated or unseated list for three years before placing it on the seated list. As the court pointed out, "It was an original assessment of land which was on no list. It was not a case for notice to the owner." In the Weaver case, the land was properly assessed in 1900 as seated land, but improperly returned as unseated land and the record fails to show that there was not sufficient personal property on the premises wherewith to pay the taxes and that a demand had been made on the owner to pay, which was refused. In such circumstances we held the treasurer's sale was an invalid one.

For the reasons we have stated, we are of the opinion that the learned court below was justified in directing a verdict for plaintiff.

Judgment affirmed.